**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**GOLD BANK, a Kansas Bank**

    **Plaintiff,**

**v.**

                                                        **Case No.  05-2239-JWL**

**MIKE JOHANNS, in his official capacity
as the Secretary of Agriculture, The United
States Department of Agriculture, and the
Farm Service Agency**

    **Defendants.**

**MEMORANDUM AND ORDER**

This case involves a claim by Gold Bank against the United States Department of Agriculture ("the USDA") and the Farm Service Agency for refusing to accept requests for interest assistance payments ("IAP requests") made by Gold Bank. This matter comes before the court on the USDA's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. Pro. 12(b)(1). It alleges that pursuant to the Tucker Act, 28 U.S.C. § 1491, the Court of Federal Claims has exclusive subject matter jurisdiction to hear this claim. For the reasons explained below, the motion to dismiss for lack of subject matter jurisdiction is granted.

**Brief Factual Background**

Gold Bank participates in several federal farm credit programs. It seeks a declaration that the USDA has acted wrongfully regarding its denial of interest assistance payments

1

pursuant to regulations drafted under the authority of 7 U.S.C. § 1999 (the Interest Rate Reduction Program). In denying roughly 50 of Gold Bank's IAP requests, the USDA stated that it would not accept changes that Gold Bank attempted to make to standard loan contract forms. Gold Bank now challenges the USDA's regulations and seeks to regain money withheld by the USDA. Specifically, Gold Bank alleges that the USDA acted arbitrarily in drafting 7 C.F.R. § 762.124, which Gold bank alleges is unconstitutionally vague. Gold Bank admits that its victory would result in monetary relief on its previous 50 IAP requests, but it alleges that it primarily seeks prospective relief to clarify its on-going relationship with the USDA. The USDA, however, alleges that because Gold Bank's claim is based on loan contracts with the United States government, the Court of Federal Claims under the Tucker Act has exclusive subject matter jurisdiction to hear Gold Bank's claim.

## **Standard of Review**

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. Pro. 12(b)(1) is raised either as a facial or a factual challenge. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203-04 (10th Cir. 2001) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). As is the case here, a facial challenge attacks the plaintiff's allegations in the complaint regarding subject matter jurisdiction. Because the court construes the USDA's motion to dismiss to be a facial challenge based on sovereign immunity, we accept Gold Bank's allegations of material fact as true and construe the complaint in its favor. *Id*. (citing *Riggs v. City of Albuquerque*, 916 F.2d 582, 584 (10th Cir. 1990)).

Because federal courts are courts of limited jurisdiction, however, we start with the presumption that we lack subject matter jurisdiction. *U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). "If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." *Id*. (citing *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994)). Thus, Gold Bank bears the burden "of alleging 'the facts essential to show jurisdiction' and supporting those facts with competent proof. Mere conclusory allegations of jurisdiction are not enough." *Id*.

### Analysis

Sovereign immunity shields the United States and its agencies from being sued without their consent. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). It also bars suits against federal officers "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963). Here, Gold Bank has sued Mr. Johanns in his official capacity, and this claim is properly treated as an action against the United States. *See Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002); *Weaver v. United States*, 98 F.3d 518, 529 (10th Cir. 1996); *State of N.M. v. Regan*, 745 F.2d 1318, 1320 (10th Cir. 1984).

In addition, "[s]overeign immunity is jurisdictional in nature." *Meyer*, 510 U.S. at 475. "It is well settled that the United States . . . [is] immune from suit, unless sovereign immunity has been waived." *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir.1989). Any waiver must be unequivocal and is to be strictly construed in favor of immunity. *Franconia Associates v.*

*United States*, 536 U.S. 129, 144 (2002); United *States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). General jurisdictional statutes, including 28 U.S.C. § 1331, do not waive the United States's sovereign immunity. *Lonsdale v. United States*, 919 F.2d 1440, 1443-44 (10th Cir. 1990).

Having determined that Gold Bank's suit is directed against the United States, we must determine whether the United States has consented to defend against this suit in federal district court. *State of N.M. v. Regan*, 745 F.2d 1318, 1320-21 (10th Cir. 1984) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Gold Bank alleges that this court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and the waiver of sovereign immunity found in 5 U.S.C. § 702 (the Administrative Procedures Act). Although 28 U.S.C. § 1331 does grant this court broad subject matter jurisdiction, that section does not grant a general waiver of sovereign immunity by the United States. *Id*. (citing *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 724 (2d Cir.1983)). "We must therefore look elsewhere." *Id*.

Gold Bank attempts to gain a waiver of sovereign immunity under the Administrative Procedures Act ("the APA"). Section 702 of the APA contains a limited waiver of sovereign immunity. It states in part: "A person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. "Thus, § 702 has been construed as granting the United States' consent to suit in cases involving agency action, subject however, to the proviso that the action is not one for 'money damages.'" *Regan*, 745 F.2d at 1321. Section 704 of the Act further limits any waiver of sovereign immunity. It states in part that judicial review of agency action is available in federal district court only if there is "no other

adequate remedy." 5 U.S.C. § 704. Thus, Gold Bank must clear two independent barriers to establish that this court has subject matter jurisdiction: (1) it must prove that its claim is not "one for money damages"; and (2) it must prove that "no other adequate remedy exists." The court finds that Gold Bank fails on both accounts.

**1.     Money Damages**

Gold Bank attempts to persuade the court that its claim is not for money damages based on a government contract. Its attempt is unavailing, however, as the statute it relies upon, 7 U.S.C. § 1999, confirms that its claim is based on government loan assistance contracts. *See, e.g.*, 7 U.S.C. § 1999(b) (stating that "the Secretary shall enter into a contract with, and make payments to, a legally organized institution to reduce during the term of such contract the interest rate paid by a borrower on a guaranteed loan. . . ."; 7 U.S.C. § 1999(c) ("In return for a contract entered into by a lender under subsection (b) of this section for the reduction of the interest rate paid on a loan, the Secretary shall make payments to the lender. . . ."). The USDA's objectionable regulation, therefore, is enmeshed in this contractual relationship between the parties.

For a claim involving a sum greater than $10,000 against the United States that is founded upon either an agency regulation or a government contract, the Tucker Act "vests exclusive jurisdiction" with the Court of Federal Claims. *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1464 (10th Cir. 1989) (citing *Regan*, 745 F.2d at 1322; *Rogers v. Ink*, 766 F.2d 430, 433 (10th Cir.1985)).

For the Court of Federal Claims to have exclusive jurisdiction, three conditions must

be met: "(1) the action is against the United States; (2) the action seeks monetary relief in excess of $10,000; and (3) the action is founded upon the Constitution, federal statute, executive regulation, or government contract." *State of N.M. v. Regan*, 745 F.2d 1318, 1322 (10th Cir. 1984). Here, all three conditions are met. Gold Bank seeks monetary payment in excess of $10,000 in the form of denied interest payment requests on government loan contracts, as well as declaratory relief that 7 C.F.R. § 762.124 is unconstitutionally vague. "[W]hen the 'prime objective' or 'essential purpose' of the complaining party is to obtain money from the federal government (in an amount in excess of $10,000), the Claims Court's exclusive jurisdiction is triggered." *Colorado Dept. of Highways v. U.S. Dept. of Transp.*, 840 F.2d 753, 755-56 (10th Cir. 1988) (quoting *Regan*, 745 F.2d at 1322).

Further, Gold Bank's attempt to cast its claim as one for declaratory relief ignores consonant Tenth Circuit precedent on this issue. It makes no difference that Gold Bank asks for declaratory relief instead of directly asking for money. *See id.* Gold Bank never even attempts to refute that "Tenth Circuit law is clear that the Court of Federal Claims' exclusive jurisdiction may not be avoided by 'framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief when, in reality, the thrust of the suit is one seeking money from the United States.'" *Burkins v. United States*, 112 F.3d 444, 449 (10th Cir. 1997). The established test is met "even if a complaint does not explicitly seek monetary relief, if the plaintiff's 'prime objective' or 'essential purpose' is to recover money. . . ." *Id.* (internal citations omitted). Indeed, the Tenth Circuit long has held:

> A party cannot avoid the exclusive jurisdiction of the Claims Court under the

> Tucker Act merely by artfully pleading injunctive, declaratory or mandatory relief when the purpose of the suit is to obtain money from the United States in excess of $10,000. *Rogers v. Ink*, 766 F.2d at 434; *New Mexico v. Regan*, 745 F.2d 1318, 1322 (10th Cir.1984). Nor may a plaintiff transform a claim for monetary relief into an equitable action simply by requesting injunctive relief that may result in the payment of money. *Rogers*, 766 F.2d at 434 (holding that although plaintiffs' first prayer seeks declaratory relief, the underlying purpose of the action was to obtain money from the United States); *accord Regan*, 745 F.2d at 1322 (holding that State suit to recover federal royalties used to pay a windfall profits tax was within the exclusive jurisdiction of the Claims Court because the States' declaratory relief request was "incidental and subordinate to the basic suit for money"); *Amalgamated Sugar Co. v. Bergland*, 664 F.2d at 824 (holding exclusive jurisdiction of the Claims Court even when plaintiff sought only a declaratory judgment because the actual controversy remaining after the equitable issues were settled concerned monetary relief).

*Id*.

In *Regan*, the Tenth Circuit reversed the district court, which had held that it had subject matter jurisdiction to hear the claim for royalty payments owed by the United States. 745 F.2d at 1322. The court held, "This, then, is a claim for money cognizable under the [Tucker] Act. [The plaintiff's] additional requests for an accounting and declaratory relief are merely incidental and subordinate to the basic suit for money. Although such has not always been the case, the Claims Court may now grant equitable relief as an incident to the award of money in the interest of affording complete justice to the parties." *Id*. *See also Rogers v. Ink*, 766 F.2d 430, 434-35 (10th Cir. 1985).

Then again, in *Eagle-Picher Industries, Inc. v. United States*, 901 F.2d 1530 (10th Cir. 1990), the Tenth Circuit reversed the district court for the exact same reason. It held: "[A] judgment in favor of [the plaintiff] would result in [it] receiving money from the federal government pursuant to the contract. Because [its] prime objective in this litigation is to force

7

the federal government to perform the contract, i.e., to pay money to [the plaintiff], this action should have been brought in the Claims Court." *Id*. at 1533.

Finally, in its most recent decision on the matter, the Tenth Circuit again held that the district court lacked subject matter jurisdiction to hear a claim that would result in payment of money by the United States to the plaintiff. Upon finding that the district court lacked subject matter jurisdiction, the court vacated the district court's rulings on the plaintiff's claims for offsetting royalty overpayments. *Amerada Hess Corp. v. Department of Interior*, 170 F.3d 1032, 1033 (10th Cir. 1999). The Tenth Circuit once again observed:

> [T]he parties contend the district court had jurisdiction to hear all of [the plaintiff's] claims under the APA, which provides concurrent jurisdiction to "court[s] of the United States" where an action seeks "relief other than money damages." 5 U.S.C. § 702. This argument, which asks us to place the form of a complaint over the substance of its claims, is unavailing. '[I]f the plaintiff's 'prime objective' or 'essential purpose' is to recover money (in an amount in excess of $10,000) from the federal government, then the Court of Federal Claims' exclusive jurisdiction is triggered.' Therefore, this court does not-and the district court did not-have jurisdiction over [the plaintiff's] claims arising from [the] refusal to refund [the plaintiff's excess royalty payments.

*Id.* at 1035-36 (internal citations omitted).

### 2.  **An Alternative, Adequate Remedy Exists**

Attempting to circumvent this clear line of Tenth Circuit precedent, Gold Bank alleges that the Court of Federal Claims is an inadequate forum for its claim against the USDA because it needs to define its prospective, on-going relationship in order to ensure that all its rights are protected. This argument, however, also fails to account for the clear weight of authority on this issue.

8

The Federal Circuit has provided in-depth explanations as to why a successful suit for retroactive monetary damages in the Federal Court of Claims will guarantee that plaintiffs receive free-flowing prospective relief as well. For instance, in *Consolidated Edison Co. v. Dept. of Energy*, 247 F.3d 1378 (Fed. Cir. 2001), the court held:

> In the event of success in its claims before the Court of Federal Claims, [the plaintiff] will receive a refund of all payments [ ] because the United States illegally exacted those funds. In the face of such a judgment, the United States could not proceed to assess further [ ] payments without again illegally exacting funds. Res judicata principles would require immediate refund of any assessment with interest. Moreover, this court cannot imagine that the United States would continue to require the [ ] companies to pay unlawful exactions.
>
> . . .
>
> [The plaintiff's] case for retrospective monetary relief before the Court of Federal Claims overlaps with its claims for prospective monetary relief before the district court. Relief from its retrospective obligations will also relieve it from the same obligations prospectively. In this case, without the complexities of the ongoing federal-state relationships present in *Bowen*, a money judgment in the Court of Federal Claims will provide [the plaintiff] with an adequate remedy against the same exactions in the future.

*Id.* at 1384-85.

After citing the Tenth Circuit's decision in *Eagle-Picher*, 901 F.3d 1530, the court in *Consolidated Edison* concluded that the district court lacked subject matter jurisdiction because an alternative, adequate remedy existed in the Federal Court of Claims. Thus, under § 704 of the APA, the district court lacked jurisdiction. *Id.* at 1385-86.

Last year, in *Christopher Village, L.P. v. United States*, 360 F.3d 1319 (Fed. Cir. 2004), the Federal Circuit extended its holding in *Consolidated Edison*. The court initially observed that "the APA waives sovereign immunity" against the United States "when the suit

calls for 'relief other than money damages,' but only if 'there is no other adequate remedy.' This limits the government's waiver of sovereign immunity to situations in which 'no other adequate remedy' exists." *Id*. at 1327 (internal citations omitted).  With this backdrop in mind, the court once again explained that the plaintiff could obtain both retroactive and prospective relief by suing in the Federal Court of Claims.  Returning to its earlier decision, the court reiterated that "a litigant's ability to sue the government for money damages in the Court of Federal Claims is an 'adequate remedy' that precludes an APA waiver of sovereign immunity in other courts." *Id*. at 1327 (citing *Consolidated Edison*, 247 F.3d at 1384).

At bottom, Gold Bank's claim is for money damages in the form of denied IAP requests from the USDA.  Although Gold Bank did not explicitly request money damages from this court, that is the practical effect of its claim.  As both the Tenth Circuit and the Federal Circuit have held, "'[a] party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States.'" *Id*. at 1328 (quoting *Rogers v. Ink*, 766 F.2d 430, 434 (10th Cir.1985)).

## Conclusion

To even attempt to find that this court has subject matter jurisdiction over Gold Bank's claim, this court would have to bypass an unbroken string of Tenth Circuit holdings directly on point.  Aside from not explaining why its request for declaratory relief is not in essence a disguised attempt to obtain money from the United States, Gold Bank does not cite a single

10

Tenth Circuit decision[1] in support of its allegation that this court has subject matter jurisdiction. In the absence of any analysis why the aforementioned line of Tenth Circuit cases do not apply here, the court will abide by established precedent and dismiss this case in favor of Gold Bank's filing suit in the Federal Court of Claims.

**IT IS THEREFORE ORDERED BY THE COURT** that the USDA's motion to dismiss (doc. 9) is granted.

**IT IS SO ORDERED** this 23rd day of December, 2005.

        s/ John W. Lungstrum
        John W. Lungstrum
        United States District Judge

---

[1] To the extent Gold Bank relies upon *Katz v. Cisneros*, 16 F.3d 1204 (Fed. Cir. 1994), the court notes initially that the dissenting judge in that case relied upon precedent from the Tenth Circuit, which more appropriately concern this court. Further, the decision in *Katz* does not support Gold Bank's claim for two other independent reasons: (1) the two contrary decisions cited by this court from the Federal Circuit post-date by nearly a decade the Federal Circuit's decision in *Katz*, which shows that it altered its course on the issue; and (2) within a year of issuing it, the Federal Circuit explicitly limited *Katz* to its facts. *See Brighton Village Associates v. United States,* 52 F.3d 1056, 1059-60 (Fed. Cir. 1995).